DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

JANELLE K. SARAUW, BRIGITTE )
BERRY, )
 )
    Plaintiffs, )
 )  Civil No. 2017-5
     v. )
 )
KEVIN A. RODRIQUEZ, CAROLINE F. )
FAWKES, VIRGIN ISLANDS JOINT )
BOARD OF ELECTIONS, BOARD OF )
ELECTIONS ST. THOMAS & ST. JOHN, )
 )
    Defendants. )
_____ )
 )
KEVIN A. RODRIQUEZ, )
 )
    Plaintiff, )
 )
     v. )  Civil No. 2017-3
 )
32ND LEGISLATURE OF THE VIRGIN )
ISLANDS, SENATOR MYRON JACKSON, )
 )
    Defendants. )
_____ )

ATTORNEYS:

**Edward L. Barry**
Christiansted, U.S.V.I.
  *For Janelle K. Sarauw and Brigitte Berry,*

**Francis E. Jackson, Jr.**
Law Offices of Francis Jackson
St. Thomas, U.S.V.I.
  *For Kevin A. Rodriquez,*

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 2

**Claude E. Walker, AG**
**Ariel Marie Smith-Francois, AAG**
**Carol Thomas-Jacobs, AAG**
**Pamela R. Tepper, AAG**
V.I. Department of Justice
St. Thomas, U.S.V.I.
    *For Caroline F. Fawkes,*

**Julita K. De Leon**
St. Thomas, U.S.V.I.
    *For Virgin Islands Joint Board of Elections and Board of*
    *Elections St. Thomas & St. John,*

**Kye Walker**
Christiansted, U.S.V.I.
    *For 32nd Legislature of the Virgin Islands and Senator*
    *Myron Jackson.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is (1) the complaint filed by Kevin A.
Rodriquez against the 32nd Legislature of the Virgin Islands and
Senator Myron Jackson bearing Civil Case No. 17-3 (the "Federal
Action"); and (2) the complaint filed by Janelle K. Sarauw and
Brigitte Berry against Rodriquez, the Joint Board of Elections,
and the Board of Elections St. Thomas & St. John bearing Civil
Case No. 17-5 (the "Removed Action") (the Removed Action and the
Federal Action are collectively referred to as the "Consolidated
Cases").

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 3

The parties in these Consolidated Cases have agreed to have this matter tried by the Court on the parties' submissions. This memorandum opinion outlines the reasons for the Court's conclusions.

## I.   FACTUAL AND PROCEDURAL HISTORY

On January 25, 2016, Kevin A. Rodriquez filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee. In his bankruptcy petition, Rodriquez swore under penalty of perjury that he lived in Tennessee and had not lived in another state anytime during the preceding three years.

On November 8, 2016, the Virgin Islands held an election to choose senators to serve in the 32nd Legislature of the Virgin Islands. The District of St. Thomas-St. John was allotted seven seats to be filled by the top seven vote-getters. Among those running for the seats were Rodriquez and Janelle K. Sarauw ("Sarauw"). After the election, Rodriquez placed sixth while Sarauw placed eighth. The Board of Elections certified the election results on November 22, 2016.

On December 9, 2016, Sarauw and Brigitte Berry ("Berry"), a volunteer for Sarauw's campaign, filed a complaint in the

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 4

Superior Court of the Virgin Islands. The complaint names as defendants Rodriquez; the Virgin Islands Joint Board of Elections; the Board of Elections St. Thomas & St. John; and Caroline F. Fawkes ("Fawkes"), the Supervisor of Elections. Sarauw and Berry allege that Rodriquez is not qualified to serve in the Virgin Islands Legislature because he has not been "a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election." *See* 48 U.S.C. § 1572. Sarauw and Berry seek injunctive relief preventing Rodriquez from taking a seat in the 32nd Legislature.

On December 29, 2016, the Superior Court issued a preliminary injunction that enjoined Rodriquez from taking the oath of office. In its ruling, the Superior Court held, in part, that Rodriquez could not satisfy the residency requirement. On January 4, 2017, after an expedited appeal, the Virgin Islands Supreme Court affirmed the Superior Court's order.

The January 4, 2017, the Superior Court held a merits hearing on Sarauw and Berry's request for a permanent injunction. After the hearing, the Superior Court held that Rodriquez was a bona fide resident of the Virgin Islands, vacated the preliminary injunction, and dismissed the case.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 5

Sarauw and Berry appealed the Superior Court's decision to the Virgin Islands Supreme Court.

On January 8, 2017, the Virgin Islands Supreme Court held that Rodriquez was "bound to his prior representations" to the Bankruptcy Court for the Middle District of Tennessee under the doctrine of judicial estoppel. *Sarauw v. Fawkes*, No. CV 2017-0005, 2017 WL 77123, *12 (V.I. Jan. 8, 2017). As such, the Virgin Islands Supreme Court held that Rodriquez "cannot claim in this proceeding to have been a bona fide resident of the Virgin Islands during the same time period." *Id.* The Virgin Islands Supreme Court vacated the Superior Court's January 4, 2017, opinion and order, reinstated the preliminary injunction enjoining Rodriquez from taking the oath of office, and remanded the case for further proceedings related to Sarauw and Berry's permanent injunction.

On January 10, 2017, Rodriquez filed a notice of removal in this Court pursuant to 28 U.S.C. § 1441 to have Sarauw and Berry's complaint (the "Removed Action") removed to this Court. Rodriquez asserts federal question jurisdiction as the grounds for removal. On January 12, 2017, Sarauw and Berry filed an emergency motion to remand the Removed Action. They also filed

*Sarauw v. Rodriguez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 6

an emergency motion to expedite proceedings in the Removed
Action.

Also on January 10, 2017, Rodriquez filed a complaint in
this Court (the "Federal Action"). Rodriquez names the 32nd
Legislature of the Virgin Islands and Senator Myron Jackson
("Jackson") as defendants. In his complaint, Rodriquez seeks a
declaration that the Virgin Islands Legislature has sole
authority to determine its members. Rodriquez seeks an
injunction dissolving the Superior Court's preliminary
injunction and directing the 32nd Legislature to seat Rodriquez
as a member.

On January 17, 2017, Rodriquez filed a motion for summary
judgment on his claims and a motion to expedite proceedings in
the Federal Action. On January 25, 2017, the 32nd Legislature
and Jackson filed a motion to dismiss Rodriquez's complaint.

On January 25, 2017, the Court held a consolidated hearing
for the Removed Action and the Federal Action. After hearing
argument on several issues, the Court denied Sarauw and Berry's
motion to remand from the bench.

On January 27, 2017, the Court ordered the Federal Action
and the Removed Action consolidated for all purposes (the
"Consolidated Cases"). Also on January 27, 2017, the parties

*Sarauw v. Rodriquez; Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 7

agreed, and the Court ordered, that the Consolidated Cases shall
be tried on the papers.

## II.   DISCUSSION

Under the ROA, "[t]he legislative power and authority of
the Virgin Islands [is] vested in a legislature, consisting of
one house." 48 U.S.C. § 1571(a); *see also Parrott v. Gov't of
the Virgin Islands*, 230 F.3d 615, 623 (3d Cir. 2000) ("[T]he
[ROA] is . . . the source of authority for the Virgin Islands
Legislature."). The Legislature of the Virgin Islands is
"composed of members to be known as senators." 48 U.S.C.
§ 1571(b).

Section 6(b) of the ROA provides that

> [n]o person shall be eligible to be a member of the
> legislature who is not a citizen of the United
> States, who has not attained the age of twenty-one
> years, who is not a qualified voter in the Virgin
> Islands, who has not been a bona fide resident of
> the Virgin Islands for at least three years next
> preceding the date of his election, or who has been
> convicted of a felony or of a crime involving moral
> turpitude and has not received a pardon restoring
> his civil rights. Federal employees and persons
> employed in the legislative, executive or judicial
> branches of the government of the Virgin Islands
> shall not be eligible for membership in the
> legislature.

48 U.S.C. § 1572(b). Section 6(g) of the ROA provides that
"[t]he legislature shall be the sole judge of the elections and

qualifications of its members." 48 U.S.C. § 1572(g). "The term
of office of each member of the legislature shall commence on
the second Monday in January following his election." 48 U.S.C.
§ 1572(a).

"The apportionment of the legislature shall be as provided
by the laws of the Virgin Islands." 48 U.S.C. § 1571(b). The ROA
places two caveats on this grant of discretion. First, "[t]hat
such apportionment shall not deny to any person in the Virgin
Islands equal protection of law." *Id.* Second, "[t]hat every
voter in any district election or at large election shall be
permitted to vote for the whole number of persons to be elected
in that district election or at large election as the case may
be." *Id.*

The number of senators is left up to the Virgin Islands
Legislature. Id. Since the enactment of the ROA, the Virgin
Islands has fixed the number of senators at fifteen. 2 V.I.C.
§ 102. Section 101, title 2, of the Virgin Islands Code provides
that there are "two legislative districts in the Virgin
Islands": the District of St. Croix and the District of St.
Thomas-St. John. 2 V.I.C. § 101. "Seven . . . senators shall be
elected by the qualified electors of the District of St. Croix
and seven . . . senators shall be elected by the qualified

electors of the District of St. Thomas-St. John. One . . .
senator shall be elected at large by the qualified electors of
the Virgin Islands from the Virgin Islands as a whole . . . ."
2 V.I.C. § 102.

As used in title 18 of the Virgin Islands Code, the term
"'candidate' includes [1] a candidate for nomination and [2] a
candidate for election." 18 V.I.C. § 1; *see also* 18 V.I.C.
§ 902(1) (explaining that, for the purposes of Chapter 29, title
18, "[c]andidate means an individual who seeks nomination for
election, or election, to any office of this Territory, whether
or not such individual has formally or publicly announced his
candidacy"). "Nomination means the selection . . . of a
candidate for public office authorized to be voted for at an
election." 18 V.I.C. § 1.

"[A]ll candidates of political parties . . . for public
offices shall be nominated . . . at primary elections held in
accordance with the provisions of this title and in no other
manner." 18 V.I.C. § 342. "The nominations of candidates at the
primary election for public offices to be filled at the ensuing
general election . . . shall be made by nomination petitions for
each candidate . . . ." 18 V.I.C. § 344. Candidates for a seat
in the legislature must have nomination petitions signed "by at

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 10

least twenty-five . . . registered and enrolled members of the proper party." 18 V.I.C. § 347(2). A candidate for nomination must also include with the petition an affidavit that states (1) his or her residence; (2) his or her election district; (3) the name of the office he or she "consents to be a candidate"; (4) that he or she is eligible for that office; and (5) that he or she "will not knowingly violate any provision of . . . title [18]."[1] 18 V.I.C. § 348.

Nomination petitions and nomination papers are filed "with the Supervisor of Elections, in the election district in which the candidate resides." 18 V.I.C. § 410. Nomination petitions must be filed the "second Tuesday in May by 6 p.m. of each general election year and before 5 p.m. seven . . . calendar days thereafter." 18 V.I.C. § 410.

---

[1] "In addition to the party nominations made at primaries, nomination of candidates for any public office may be made by nomination papers signed by qualified electors of this territory or the election district for which nomination is made . . . ." 18 V.I.C. § 381(a); *see also Coffelt v. Fawkes*, 765 F.3d 197, 204 (3d Cir. 2014) (distinguishing "traditional party-nomination process" from "'direct nomination' path to the general election ballot" and holding that individuals affiliated with a political party are not precluded from pursuing the "direct nomination" process). Where the putative nominee seeks a public office within a district, "the nomination paper shall be signed by at least 100 qualified electors of such district." 18 V.I.C. § 381(b). The putative nominee must also provide an affidavit stating (1) the election district he resides in; (2) "the name of the office for which he consents to be a candidate"; (3) that he or she is eligible for that office; and (4) "that he will not knowingly violate any provision of . . . title [18]." 18 V.I.C. § 383.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 11

Upon receipt, the Supervisor of Elections must examine the nomination petitions. 18 V.I.C. § 411(a); *see also* 18 V.I.C. § 4(b)(3) (assigning to Supervisor of Elections the duty of "receiv[ing], and determin[ing] . . . the sufficiency of nomination petitions, certificates and papers of candidates for all public and territorial offices"). "If the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then he shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed." 18 V.I.C. § 411(b). "All nomination petitions . . . accepted after the examination required by [18 V.I.C. § 411] . . . shall be deemed to be valid, unless, within five days after the last day for filing such nomination petition . . ., a petition is presented to the district court . . . praying that such petition . . . be set aside." 18 V.I.C. § 412. The Supervisor of Elections must then "certify to the boards of election, for primaries and elections, the names of candidates for all public and territorial offices." 18 V.I.C. § 4(b)(2); *see also* 18 V.I.C. § 420 ("[T]he Supervisor of Elections shall have published . . . an official list, certified by him, of all

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 12

candidates who have been nominated in accordance with the
provision of [Chapter 17, title 18] . . . .").

For primaries and general elections, "[e]ach board of
elections," after receiving all election materials,
"determine[s] the number of votes cast in the election district
for each candidate." 18 V.I.C. § 627(a). The chairman of each
board then notifies each candidate nominated or elected and
reports the result to the Supervisor of Elections. 18 V.I.C.
§ 627(b); *see also* 41 V.I.C. § 47(9) (directing boards of
election to "compute the returns[] and certify . . . the results
thereof to the Supervisor of Elections" after votes are
tallied). After "receiv[ing] from the Deputies of each election
district the reports of the results of primaries and elections,"
the Supervisor of Elections must "determine which candidates
have been nominated or elected at large . . . and notify such
candidates of their nomination or election." 18 V.I.C.
§ 4(b)(4).

"A petition for a recount may be filed by any candidate in
a primary or election who believes that there has been fraud or
error committed in the canvassing or return of the votes cast at
such primary or election." 18 V.I.C. § 629(a). A recount
petition must "be filed with the board of elections of the

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 13

legislative district in which the recount is requested." *Id.*

"The petition may not be filed later than seven . . . working

days after the board has issued its official report of the . . .

election at which the votes were cast." *Id.*

### III. <u>ANALYSIS</u>

#### A. Jurisdiction

In order for this Court to hear this matter, it must have

jurisdiction. *See, e.g.*, *Nesbit v. Gears Unlimited, Inc.*, 347

F.3d 72, 76 (3d Cir. 2003). The Court will first assess whether

the claims presented in the Federal Action and the Removed

Action give rise to federal questions. The Court will then

address whether the *Rooker-Feldman* doctrine precludes its

exercise of jurisdiction.

#### 1. Federal Question Jurisdiction

In the Removed Action, Sarauw and Berry allege that

Rodriquez was not a "bona fide resident of the Virgin Islands"

within the meaning of Section 6(b) of the Revised Organic Act

(the "ROA"), and thus not eligible to be a Virgin Islands

senator. Sarauw and Berry seek declaratory and injunctive relief

on their claims. They seek a declaration that Rodriquez is

ineligible for membership in the 32nd Legislature and an

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 14

injunction barring Rodriquez from serving as a senator and ordering Fawkes and the Boards of Election to de-certify Rodriquez as a qualified candidate.

In the Federal Action, Rodriquez asserts that the ROA incorporates principles of separation of powers. He asserts that (1) Section 6(g) of the ROA vests the Virgin Islands Legislature with the sole authority to judge the qualifications of its members; and (2) interfering with the Legislature violates separation of powers principles enshrined in the ROA.

This Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (explaining that 28 § 1331 "is invoked by and large by plaintiffs pleading a cause of action created by federal law"). A case also arises under federal law where the "right to relief depends upon the construction or application of federal law." *See PNC Bank, N.A. v. PPL Elec. Utilities Corp.*, 189 Fed. App'x 101, 104 (3d Cir. 2006 (quoting *Grable & Sons Metal Prods., Inv.*, 545 U.S. at 313).

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 15


In both the Federal Action and the Removed Action, the claimants seek an interpretation of the ROA. This is not the first time that this Court has been tasked with interpreting provisions of the ROA.[2]

The Court was called upon to interpret the ROA in *Kendall v. Russell.* No. CIV. 2007-126, 2008 WL 219762 (D.V.I. Jan. 16, 2008), *aff'd*, 572 F.3d 126 (3d Cir. 2009). In that case, the Virgin Islands Legislature passed legislation forming the Commission on Judicial Disabilities (the "Commission"). The "Commission ... [was] composed of five members. Two members ... [were] appointed by the Governor of the Virgin Islands, two by the President of the Legislature, and one by the Board of Governors of the Virgin Islands Bar Association." *Id.* at *1. The Commission was "empower[ed] ... to retire or remove a judge of

---

[2] The United States Congress passed the Revised Organic Act ("ROA") pursuant to its "authority to 'make all needful rules and regulations respecting the territory or other property belonging to the United States.'" *Kendall v. Russell*, 572 F.3d 126, 135 (3d Cir. 2009) (quoting U.S. Const. art. IV, § 3, cl. 2). "The [ROA] was intended to operate as a 'new basic charter of government for the territory.'" *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993) (quoting *Virgo Corp. v. Paiewonsky*, 384 F.2d 569, 576 (3d Cir. 1967)). In this manner, the ROA "serves as the Virgin Islands constitution." *Parrott*, 230 F.3d at 623; *see also Gov't of Virgin Islands v. Rivera*, 333 F.3d 143, 145 (3d Cir. 2003) ("The Revised Organic Act is the Virgin Islands' equivalent of a constitution . . . ." (internal quotation marks omitted)).

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 16


the Superior Court of the Virgin Islands or a justice of the

Supreme Court of the Virgin Islands." *Id.*

　　　Two judicial complaints were filed with the Commission

alleging misconduct by Kendall, a judge of the Superior Court.

*Id.* at *2. Kendall then filed a

> two-count action, generally alleging a violation of
> the Revised Organic Act of 1954 (the "ROA").
> Specifically, in Count One, Kendall ... s[ought] a
> declaration from this Court that (1) the principle
> of separation of powers, as contemplated by the ROA,
> prohibit[ed] the Commission from conducting removal
> proceedings against him, and (2) Act 3876 [wa]s
> ineffective to authorize such proceedings because
> the legislative branch of the Government of the
> Virgin Islands ... [could] not grant itself the power
> to remove a member of the judicial branch. In Count
> Two, Kendall s[ought] injunctive relief to prevent
> the Commission from commencing or continuing removal
> proceedings against him.

*Id.* at *2.

　　　This Court held that it had subject-matter jurisdiction to

address the issue because the legal "question implicate[d] the

... [ROA], a federally-enacted statute." *Id.* On appeal, the

Third Circuit affirmed, stating, in relevant part, that "[a]s

the ROA is a federal statute, the District Court had federal

question jurisdiction in this case pursuant to 28 U.S.C.

§ 1331." *Kendall v. Russell*, 572 F.3d 126, 144 (3d Cir. 2009).

　　　Similarly, in *Dunston v. Mapp*, No. CV 2016-38, 2016 WL

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 17

3976642 (D.V.I. July 22, 2016), the Court was charged with
determining whether the removal of a Virgin Islands Superior
Court judge from the position of "Presiding Judge" by the
Governor of the Virgin Islands violated the separation of powers
principles incorporated in the ROA. *Id.* at *1-2. Because this
question required the "interpretation and construction of . . .
the [ROA]," the Court held that it "may exercise federal
question jurisdiction over the Revised Organic Act claim
pursuant to 28 U.S.C. § 1331." *Id.* at *3. On appeal, the Third
Circuit held that this Court "had federal question jurisdiction
over the interpretation of the [ROA]--a federal law pursuant to
28 U.S.C. § 1331." *Dunston v. Governor of the Virgin Islands*, --
Fed. App'x--, No. 16-3234, 2016 WL 7413522, at *1 n.1 (3d Cir.
Dec. 22, 2016) (dismissing appeal for lack of jurisdiction
"[b]ecause th[e] appeal present[ed] no live case or
controversy").

Here, the claims in the Removed Action and the Federal
Action each implicate the interpretation of the ROA. *See*
*Kendall*, 572 F.3d at 131 n.2 ("As the ROA is a federal statute,
the District Court had federal question jurisdiction in this
case pursuant to 28 U.S.C. § 1331."). As the claims arise under

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 18

the ROA, a federal statute, this Court has federal question jurisdiction.

### 2. *Rooker-Feldman* Doctrine

Sarauw and Berry argue that this Court is precluded from exercising jurisdiction over the Removed Action under the *Rooker-Feldman* doctrine.

"In certain circumstances, where a federal suit follows a state suit, the *Rooker-Feldman* doctrine prohibits the district court from exercising jurisdiction." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010). The doctrine's roots are in "the principle that the Supreme Court's 'appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority.'" *Schatten v. Weichert Realtors, Inc.*, 406 Fed. App'x 589, 591 (3d Cir. 2010) (alterations omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

The *Rooker-Feldman* doctrine "applies only in limited circumstances, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 19


court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (citation and internal quotation marks omitted). *Rooker-Feldman* is limited in its application to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

The Third Circuit has distilled "four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (alterations and internal quotation marks omitted). Of the four requirements, the second and fourth "are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Here, the Removed Action is not "a suit seeking review of a state court judgment." *Id.* at 169. Rather, it is an incomplete suit, brought in the territorial court and removed to federal

*Sarauw v. Rodriquez; Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 20

court. The *Roocker-Feldman* "doctrine prevents a party from effectively trying to appeal a state-court decision in a federal district or circuit court." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431-32 (7th Cir. 2009). "Proper removal does not constitute an appeal, de facto or otherwise, of the state court proceedings but a continuation of them." *Jenkins v. MTGLQ Inv'rs*, 218 F. App'x 719, 723-24 (10th Cir. 2007); *see also Great W. Mining & Mineral Co.*, 615 F.3d at 166 (explaining that *Rooker-Feldman* doctrine may apply "[i]n certain circumstances, *where a federal suit follows a state suit*" (emphasis added)); *accord Aiken v. Waffle House, Inc.*, 509 F. Supp. 2d 541, 547 (D.S.C. 2007) ("Cases invoking the [*Rooker-Feldman*] doctrine involve *separate* federal court actions, filed in the original jurisdiction of the court, rather than removal of state court actions over which the federal court has, at the time of removal, original jurisdiction."). As such, the *Rooker-Feldman* doctrine does not preclude review of this matter.

**B. Justiciability**

Having determined that this Court has federal question jurisdiction and that the *Rooker-Feldman* doctrine does not preclude the exercise of its jurisdiction, the Court will next

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 21

consider whether the Consolidated Cases are appropriately before the Court. Indeed, where, as here, a political question may be implicated, the Court is concerned whether these matters are justiciable.

"Questions of justiciability are distinct from questions of jurisdiction, and a court with jurisdiction over a claim should nonetheless decline to adjudicate it if it is not justiciable." *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 376 (3d Cir. 2006). Stated broadly, "justiciability 'is the term of art employed to give expression to the limitation placed upon federal courts by the case-and-controversy doctrine.'" *Levy v. Miami-Dade Cnty.*, 358 F.3d 1303, 1305 (11th Cir. 2004) (alteration omitted) (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). Justiciability "confine[s] 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007) (quoting *Flast*, 392 U.S. at 95). The doctrine "encompasses a range of doctrines such as standing, mootness, ripeness, political question, and the prohibition against advisory opinions." *Levy*, 358 F.3d at 1305 (citations omitted).

*Sarauw v. Rodriquez; Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 22

When undertaking a justiciability analysis, federal courts
must make two determinations. First, a court must evaluate the
"general criteria of justiciablility" by determining "whether
the claim presented and the relief sought are of the type which
admit of judicial resolution." *Powell v. McCormack*, 395 U.S.
486, 516-18 (1969). In other words, "the court must determine
whether 'the duty asserted can be judicially identified and its
breach judicially defined, and whether the protection for the
right asserted can be judicially molded.'" *Committee to Free the
Fort Dix 38 v. Collins*, 429 F.2d 807, 811 (3d Cir. 1970)
(quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)). Second, the
court must determine "whether the structure of the . . .
[g]overnment renders the issue presented a 'political question'-
-that is, a question which is not justiciable in federal court
because of the separation of powers provided by the
Constitution." *Powell*, 395 U.S. at 517.

### 1. Amenability to Judicial Resolution

In *Powell v. McCormack*, 395 U.S. 486 (1969), the United
States Supreme Court had an opportunity to address the question
of justiciability. In that case, Adam Clayton Powell, Jr.,
("Powell") was a member of the House of Representatives during
the 89th Congress. *Id.* at 490. During that term, an

*Sarauw v. Rodriguez*; *Rodriguez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 23


investigation on Powell uncovered evidence that Powell had
misused funds during his service. *Id.* at 490-91. Though a report
was issued concluding as much, no formal action was taken during
that term. *Id.* at 490. Powell was subsequently elected to serve
during the next term. *Id.* "When the 90th Congress met to
organize," however, "Powell was asked to step aside while the
oath was administered to the other members-elect." *Id.* A Select
Committee was appointed "to determine Powell's eligibility" and
Powell was prohibited from taking his seat. *Id.* After several
hearings and debate, a resolution was passed excluding Powell
from the House. *Id.* at 491-93. Powell brought suit seeking
injunctive relief preventing the enforcement of the resolution
excluding him from office and a declaration that his exclusion
was unconstitutional. *Id.* at 493-94.

On appeal, the United States Supreme Court explained that,
at the first step of the justiciability analysis, "a court must
determine whether 'the duty asserted can be judicially
identified and its breach judicially determined, and whether
protection for that right can be judicially molded.'" *Id.* at 517
(quoting *Baker*, 369 U.S. at 198). In that case, it could "not
[be] seriously contend[ed] that the duty asserted and its
alleged breach cannot be determined." *Id.* Were Powell's

*Sarauw v. Rodriguez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 24

arguments correct, "the House had a duty to seat Powell once it determined he met the standing requirements set forth in the Constitution." *Id.*

The House argued that the case was not justiciable because "federal courts cannot issue mandamus or injunctions compelling officers or employees of the House to perform specific official acts." *Id.* Thus, according to the House, the courts were unable to mold effective relief for resolving th[e] case." *Id.* The Supreme Court "express[ed] no opinion about the appropriateness of coercive relief in that case." *Id.* In addition to injunctive relief, Powell also sought a declaratory judgment, "and a request for declaratory relief may be considered independently of whether other forms of relief are appropriate." *Id.* at 518. Accordingly, the Supreme Court held that "in terms of the general criteria of justiciablility, th[e] case [wa]s justiciable." *Id.*

Here, in the Removed Action, Sarauw and Berry argue that the boards of election have a duty to de-certify Rodriquez as an eligible candidate because of a failure to comply with Section 6(b)--the qualification section--of the ROA. In the Federal Action, Rodriquez argues that Section 6(g)--the section authorizing the Legislature to be the judge of the

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 25


qualifications of its members--imposes a duty on the 32nd
Legislature to seat Rodriquez as a senator. Neither party
contends that any duty or breach of the ROA that is asserted
here cannot be judicially determined. Indeed, these issues are
ultimately a matter of statutory interpretation, an area well
within the province of the judiciary. *See Schiaffo v. Helstoski*,
492 F.2d 413, 419 (3d Cir. 1974) (describing "a court's
performance of its usual function of statutory interpretation").
Accordingly, the Court holds that the general criteria of
justiciability are satisfied.

### 2. Political Question

Ordinarily, the Court would next consider whether the
political question doctrine counsels against adjudicating these
claims. That is so because "it is well established that the
federal courts will not adjudicate political questions." *Powell*,
395 U.S. at 518. "The political question doctrine does not
deprive courts of jurisdiction." *Brown v. Hansen*, 973 F.2d 1118,
1121 (3d Cir. 1992). Rather, federal courts decline to
adjudicate political questions "primarily because of separation
of power." *Powell*, 395 U.S. at 518. Where, as here, the dispute
requires a federal court to review a branch of state government,
the United States Supreme Court has instructed that "it is the

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 26

relationship between the judiciary and the coordinate branches

of the Federal Government, and not the federal judiciary's

relationship to the States, which gives rise to the 'political

question.'" *Baker*, 369 U.S. at 210.

Even if the Court were required to assess the political

question doctrine, there would not be a bar to adjudication. To

begin, the Supreme Court in *Powell*

> concluded that on the surface of any case held to
> involve a political question was at least one of the
> following formulations: a textually demonstrable
> constitutional commitment of the issue to a co-
> ordinate political department; or a lack of
> judicially discoverable and manageable standards for
> resolving it; or the impossibility of deciding
> without an initial policy determination of a kind
> clearly for nonjudicial discretion; or the
> impossibility of a court's undertaking independent
> resolution without expressing lack of the respect
> due co-ordinate branches of government; or an
> unusual need for unquestioning adherence to a
> political decision already made; or the potentiality
> of embarrassment from multifarious pronouncements by
> various departments on one question.

*Powell*, 395 U.S. at 518-19.

Article I, section 3, of the United States Constitution

provides that "[e]ach House shall be the Judge of the Elections,

Returns and Qualifications of its own Members." U.S. Const. art.

I, § 3, cl. 1. In analyzing whether Powell's claims raised a

non-justiciable political question, the Supreme Court's analysis

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 27


focused primarily on whether Article 1, section 5, constituted a
"'textually demonstrable constitutional commitment' to the House
of the 'adjudicatory power' to determine Powell's
qualifications." *Id.* at 519-48. In turn, that inquiry
encompassed two questions: (1) "whether there is a 'textually
demonstrable constitutional commitment of the issue to a
coordinate political department'"; and (2) if so, "what is the
scope of such commitment." *Id.* at 521 (quoting *Baker*, 369 U.S.
at 217).

After an exhaustive review of the pre-constitutional
convention precedent, the constitutional convention debates, and
the post-constitutional convention precedent, the Supreme Court
held that the standing qualifications enumerated in the
Constitution are exhaustive. *Id.* at 547-48. "[A]t most, Article
I, section 5, is "a 'textually demonstrable constitutional
commitment' to Congress to judge only the qualifications
expressly set forth in the Constitution." *Id.* at 548. Because
the parties conceded that Powell was excluded for reasons other
than failing to meet those qualifications, Congress had clearly
exceeded the scope of any commitment of authority it had. Thus,
the matter was justiciable. *Id.* at 550.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 28


There are other examples of the United States Supreme Court addressing justiciability issues. *See, e.g.*, *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 614 (1929) (explaining that when senator-elect "presented himself to the Senate," "[t]he jurisdiction of the Senate to determine the rightfulness of the claim was invoked and its power to adjudicate such right immediately attached by virtue of section 5 of article 1 of the Constitution"); *Roudebush v. Hartke*, 405 U.S. 15 (1972), 25 ("A recount does not prevent the Senate from independently evaluating the election any more than the initial count does. The Senate is free to accept or reject the apparent winner in either count, and, if it chooses, to conduct its own recount").

In each of the cases addressing justiciability, the legislature undertook some action that was (1) determinative or adjudicatory in nature; and (2) exclusionary, or potentially exclusionary, in effect. Here, significantly, the Virgin Islands Legislature has done neither. In that sense, the facts presented here are outside of the heartland of cases addressing justiciability in the context of a legislature.

Rodriquez does not claim he is a senator-elect in need of an oath, or anything, to become a member. Rather, he claims he is a member, by virtue of the passage of time--the second Monday

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 29

in January after an election--and merely in need of a seat. In essence, he seeks a declaration or validation of what he claims he already is--a member--so that the Court can command the Virgin Islands Legislature to give him his due--a seat.

Indeed, Rodriquez even indicates that he is beyond the state of needing a determination, as he claims he is already a member of the Virgin Islands Legislature. *See, e.g.*, Civil Case No. 17-3, ECF No. 17 at 11 ("[P]ursuant to § 6(a) of the ROA, [Rodriquez's] term of office began at 12:01 a.m., January 9, 2018, and neither the ROA nor any Virgin Islands statute contains any provision requiring that he take an 'oath of office' before assuming the duties of his office."). As such, the Legislature need only seat him. To that end, he invites this Court to "order[] the 32nd Legislature and its President to seat [Rodriquez] as a member of the Legislature *as required by the Organic Act*." Civil Case No. 17-3, ECF No. 1 at 5 (emphasis added).

The question raised by Rodriquez's claim is whether the ROA provides a legal basis for the Court to command the Virgin Island Legislature to seat Rodriquez. That is ultimately a question of statutory interpretation and construction.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 30

As the Supreme Court held in *Powell*, "the Constitution does not vest in the Congress a discretionary power to deny membership." 395 U.S. at 548. Thus, a claim that the House excluded a duly-elected candidate that met each of the standing requirements was justiciable because Congress's status as "the Judge of the . . . Qualifications of its own Members," U.S. Const. art. I, § 5, cl. 1, "is at most a 'textually demonstrable commitment' to Congress to judge only the qualifications set forth in the Constitution." *Powell*, 395 U.S. at 548. Similarly, the determination the Court is called to make here is not a political question.

To be sure, political issues may be implicated. That is not dispositive, however. What the Supreme Court noted in *Powell* is equally valid with respect to Rodriquez's claim to a seat, as such a determination to a

> right to sit would require no more than an interpretation of the Constitution. Such a determination falls within the traditional role accorded courts to interpret the law, and does not involve a lack of respect due a coordinate branch of government, nor does it involve an initial policy determination of a kind clearly for nonjudicial discretion.

*Id.* at 548-49 (internal quotation marks omitted).

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 31


Similarly, a determination of Rodriquez's claim that the ROA, as applied to the facts here, entitle him to a seat in the 32nd Legislature requires an interpretation of the ROA. As discussed above, that is a task the Court has routinely undertaken as it falls within the traditional role of the courts. As such, the political question doctrine does not preclude this Court's consideration.

Having determined that no political question would bar the Court from adjudicating Rodriquez's claim, and because the claim is generally justiciable, the Court will now turn to the merits.

### C. Merits

#### 1. The Federal Action

Rodriquez seeks an injunction from this Court commanding the Virgin Islands Legislature and its President to seat him because, Rodriquez claims, he is a member. As discussed above, Rodriquez asserts that he was a member upon the passage of the second Monday in January, 2017. Thus, injunctive relief is necessary to effectuate Rodriquez's status as a member. In light of that claim, the Court will assess Rodriquez's assertion that he is a member of the 32nd Legislature.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 32

Like the United States Constitution, "[t]he ROA divides the power to govern the territory between a legislative branch, an executive branch, and a judicial branch. By organizing the government in that manner, Congress 'implicitly incorporated the principle of separation of powers into the law of the territory.'" *Kendall*, 572 F.3d at 135 (quoting *Smith v. Magras*, 124 F.3d 457, 465 (3d Cir. 1997)). The "practical effect" of the structure of the Virgin Islands government is that one branch of government is "prohibit[ed] . . . from exercising powers that are reserved for the other branches unless such an exercise is 'expressly provided or incidental to the powers' that a branch necessarily has." *Id.* at 135-36 (quoting *Springer v. Philippine Islands*, 277 U.S. 189, 201 (1928)).

Section 6(b) of the ROA lists the standing qualifications for membership in the Virgin Islands Legislature. Section 6(b) provides that

> [n]o person shall be eligible to be a member of the legislature who is not a citizen of the United States, who has not attained the age of twenty-one years, who is not a qualified voter in the Virgin Islands, who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election, or who has been convicted of a felony or of a crime involving moral turpitude and has not received a pardon restoring

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 33

> his civil rights. Federal employees and persons
> employed in the legislative, executive or judicial
> branches of the government of the Virgin Islands
> shall not be eligible for membership in the
> legislature."

48 U.S.C. § 1572.

Section 6(g) of the ROA provides that "[t]he legislature shall be the sole judge of the elections and qualifications of its members." 48 U.S.C. § 1572(g). The ROA also provides that "[t]he term of office of each member of the legislature shall commence on the second Monday in January following his election." 48 U.S.C. § 1572.

### a. Membership

Rodriquez argues that, because the ROA does not require an oath as a prerequisite to membership in the Virgin Islands Legislature, duly elected candidates become senators automatically "at 12:01 a.m., January 9, 2017." Civil Case No. 17-5, ECF No. 17 at 14 (citing 48 U.S.C. § 1572(a) ("The term of office of each member shall commence on the second Monday in January following his election.")). As such, Rodriquez asserts, he is currently an actual member of the Virgin Islands Legislature. Because the Virgin Islands Legislature is "the sole judge of the elections and qualifications of its members," *see*

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 34


48 U.S.C. § 1572(g), Rodriquez argues that (1) the Removed

Action is non-justiciable; and (2) that Rodriquez is entitled to

an order declaring him a member of the Virgin Islands

Legislature and enjoining the 32nd Legislature from preventing

him from assuming office.

With respect to the Virgin Islands, prior to a 1983

amendment in Public Law 98-213, Section 29 of the ROA provided

that

> [a]ll officials of the government of the Virgin
> Islands shall be citizens of the United States. Every
> member of the Legislature of the Virgin Islands shall
> before entering upon the duties of their respective
> offices . . . make a written statement in the
> following form:
>     "I, -------, do solemnly swear (or affirm) that
> I will support, obey, and defend the Constitution
> and laws of the United States applicable to the
> Virgin Islands and the laws of the Virgin Islands,
> and that I will discharge the duties of -----------
> with fidelity.
> . . . .

48 U.S.C. § 1543 (1982).

Revisiting the requirements of Section 29, the House

Committee on Interior and Insular Affairs concluded that there

was "no necessity for federal law to stipulate that all

employees of the Government of the Virgin Islands . . . sign a

loyalty statement." H.R. Rep. 98-174 (May 16, 1983).

Subsequently, in 1983, that provision of Section 29 was deleted.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 35

*See* PL 98-213, § 6 (Dec. 8, 1983). As amended, Section 29 now requires only that "[a]ll members of the Legislature of the Virgin Islands, the Governor, the Lieutenant Governor, all judges and all officials of the government of the Virgin Islands who report directly to the Governor shall be citizens of the United States." 48 U.S.C. § 1543.

Simultaneous with the amendment to Section 29, Public Law 98-213 also added Article VI, clause 3, of the United States Constitution to the list of "provisions of and amendments to the Constitution of the United States" that are "extended to the Virgin Islands" through Section 3 of the ROA. *See* 48 U.S.C. § 1561. Article VI, clause 3, provides that "the Members of the several State Legislatures . . . shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."[3] U.S. Const. art. VI, cl. 3.

---

[3] Article VI, clause 3, expressly applies only to federal and state officials. Nevertheless, pursuant to its power to "make all needful Rules and Regulations respecting the Territory," U.S. Const. art. IV, § 3, cl. 2, Congress made the requirements of Article VI, clause 3, applicable to Virgin Islands officials. *See, e.g.*, *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989) (explaining that the Privileges and Immunities Clause, which "provides that the 'Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States,'" "has been made applicable to the Virgin Islands in the [ROA]." (quoting U.S. Const. art. IV, § 1)); *Gov't*

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 36

Though members of the Virgin Islands Legislature are required to take an oath, neither the ROA nor the Virgin Islands Code explicitly require the oath to occur prior to taking a seat as a member of the Virgin Islands Legislature.

The absence of a specific time requirement within which the oath must be taken begs the question: is the oath a condition precedent to membership in the Virgin Islands Legislature? While Article VI, clause 3, provides that "Members of the several State Legislatures . . . *shall be bound* by Oath," U.S. Const. art. VI, cl. 3 (emphasis added), it does not say when. Arguably, one can interpret that clause to mean "bound by oath" eventually or at an indeterminate time. Alternatively, the phrase could mean that: (1) being bound by oath; and (2) membership, are coterminous conditions. Thus, one condition cannot exist without the other. That is, membership cannot occur without an oath; and an oath cannot be taken without conferring membership. There is some authority that supports the latter interpretation.

―――――――――――

*of Virgin Islands v. Davis*, 561 F.3d 159, 163 (3d Cir. 2009) ("The Virgin Islands' Revised Organic Act of 1954 makes clear that the protections of the . . . Due Process Clause of the Fourteenth Amendment extend to the Virgin Islands.").

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 37


In *Powell v. McCormack*, 395 U.S. 486 (1969), the Supreme
Court discussed "the three standing requirements set forth in
the Constitution": age, citizenship, and residency. *Id.* at 521;
*see* U.S. Const. art. 1, § 2, cl. 2. The Court also noted that
several other requirements might also be standing qualifications
on the same footing as age, citizenship, and residency. *Id.* at
521 n.41. Among other provisions, the Court acknowledge that
"[i]t has been argued that . . . the oath requirement of Art.
VI, cl. 3, is no less a 'qualification' within the meaning of
Art. I, s 5, than those set forth in Art. I, s 2."[4] *Id.*

Indeed, something more than the passage of a date certainly
is likely required to be a "member." *United States v. Dietrich*,
126 F. 676 (C.C.D. Neb. 1904) illustrates that point. In that
case, the defendant in a criminal case was charged with a
bribery crime that applied only to "member[s] of Congress." *Id.*
at 676-78. It was alleged in that case that the defendant
accepted a bribe sometime after he was elected to the Senate and

─────────────────────

[4] The Supreme Court determined "that it need not reach this question, however,
since both sides agree that Powell was not ineligible under any of these
provisions." *Id.* In *U.S. Term Limits, Inc. v. Thorton*, 514 U.S. 779 (1995),
the Supreme Court again observed that "the Qualification Clauses" may include
Article VI's oath requirement. *Id.* at 787 & n.2. In that case as well, the
Court determined that it "ha[d] no need to resolve that question." *Id.* at
787 n.2.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 38


the Senate's term began, but before the defendant gave the oath
and assumed the duties of office. *Id.* at 682. The dispositive
question in the case was whether the defendant was a "member of
Congress" at the time of the alleged crime. *Id.* at 677. Judge
Van Devanter (later Justice Van Devanter) explained that the
terms "members-elect, members, and ex-members" are "never used
as the equivalent of another. When we speak of a member of
Congress we refer to one who is a component part of the Senate
or House of Representatives; one who is in office, not out of
office; one who is sharing the responsibilities and privileges
of membership." *Id.* at 678-79. The key to membership is
acceptance, which "is as essential to induction into public
office as is election or appointment." *Id.* at 681.

> In respect to some offices the manner and time of
> acceptance are prescribed in such manner as to render
> compliance therewith indispensable, but in other
> instances an office is accepted by entering upon the
> discharge of its duties. Usually the taking of an
> oath of office, and sometimes the giving of a bond
> for the faithful discharge of the duties of the
> office, is required; but generally, where one
> elected or appointed to an office is admitted
> thereto, and discharges its duties without taking
> the prescribed oath or giving the required bond, he
> is deemed a de facto officer.
> . . .
> The defendant was not admitted to a seat in the
> Senate and did not enter upon the discharge of the
> duties of that office until December 2, 1901. Not
> until that day did the Senate consider or act upon

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 39

> his election, credentials, and qualifications. Until
> then it was not known, and could not have been, in
> the absence of an earlier session of the Senate,
> whether his election, credentials, and
> qualifications would be deemed by the Senate, the
> sole and exclusive judge, to be such as to entitle
> him to membership in that body. Immediately
> following the favorable action of the Senate upon
> his election, credentials, and qualifications, the
> defendant took the oath of office as a senator, which
> was an assumption of the duties of that office, but
> until then he had not accepted the office and was
> not obligated to its acceptance. Until then it was
> optional with him to accept or decline; and if on
> December 2, 1901, he had exercised that option by
> declining instead of accepting, he would not have
> been a senator at all under the election of March
> 28, 1901.

*Id.* at 681-82.

On balance, the Court is persuaded that the plain language of Article VI, clause 3, of the United States Constitution, coupled with Section 3 of the ROA, as well as the weight of authority supports the conclusion that the oath is a standing qualification of office. Because Rodriquez has not taken the oath required by Article VI, clause 3 of the United States Constitution, he currently is not a "member" of the 32nd Legislature.

### b. Availability of Injunctive Relief

Even if Rodriquez were a member of the 32nd Legislature, his claim to injunctive relief is problematic. Rodriquez asks

this Court to command a coordinate, coequal branch of government
to undertake a task--seating Rodriquez--that is entirely and
exclusively within the 32nd Legislature's control. *See, e.g.*,
*Reed v. Cnty. Comm'rs*, 277 U.S. 376, 388 ("[The Senate] is the
judge of the elections, returns, and qualifications of its
members. It is fully empowered, and may determine such matters
without the aid of the House of Representatives or the executive
or judicial department." (citation omitted)). In essence,
Rodriquez invites this Court to cross a line that separates the
coordinate branches. The Court will decline that invitation. *See
City of N.Y. v. Heckler*, 742 F.2d 729, 740 (2d Cir. 1984)
(explaining that "a court's injunctive power must be exercised
with caution, respectful of the authority of coordinate branches
of Government").

### c. Declaration of the Validity of Section 6(g) of the ROA

Rodriquez also petitions for a declaration that "the 32nd
Legislature . . . possess[es] the sole authority and power to
determine its membership." *See* Civil Case No. 17-3, ECF No. 1 at
5. That petition is curious.

*Sarauw v. Rodriquez; Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 41

The declaration that Rodriquez seeks seems to be a restatement of Section 6(g) of the ROA. The basis for such a restatement is questionable. To the extent that Rodriquez seeks assurance that a statute is valid, the Court is mindful of the cautionary instruction provided by the United States Supreme Court:

> No federal court . . . has jurisdiction to pronounce any statute, either of a state or of the United States, void, except as it is called upon to adjudicate the legal rights of litigants in actual controversies.

*Golden v. Zwickler*, 394 U.S. 103, 110 (1969). By extension, the Court does not find it appropriate for a court to pronounce the validity of a statute where, as here, the statute's validity is not at issue.

## 2. The Removed Action

"It is settled that a federal court must take a case as it finds it on removal, requiring a district court to treat a prior state judgment 'as though it had been validly rendered in [a] federal proceeding.'" *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1212 (9th Cir. 1994) *(*quoting *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963)). "In all cases

removed to the district court after judgment has been entered by
a state court, the parties may, within thirty days of the date
the case is docketed in the district court, file motions to
alter, modify, or open the judgment." *Resolution Trust Corp. v.
Nernberg*, 3 F.3d 62, 68 (3d Cir. 1993). As such, the Court will
assess the merits of the claims in the Removed Action as that
action stood at the time of removal.

### a. Claims against the Board of Elections

#### i.   Ability to Grant Relief as Against the Board

It is axiomatic that a claim may proceed only where there
is a live and cognizable cause of action. *See, e.g.*, *N.J. Tpk.
Auth. v. Jersey Cent. Power and Light*, 772 F.2d 25, 31 (3d Cir.
1985). Where intervening circumstances prevent a court from
providing meaningful relief, the claim may be moot.

"'Article III of the Constitution grants the federal courts
the power to adjudicate only actual, ongoing cases or
controversies.'" *Dunston*, 2016 WL 7413522, at *1 (quoting
*Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237
F.3d 186, 192-93 (3d Cir. 2001)). "The mootness doctrine defines
constitutionally minimal conditions for the invocation of

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 43

federal judicial power." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). "A case is moot when 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). "The court's ability to grant effective relief lies at the heart of the mootness doctrine." *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). "That is, '[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'" *Id.* (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996)); *see also Dunston*, 2016 WL 7413522, at *1 ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)).

Sarauw and Berry seek a "permanent injunction . . . compelling Defendant Fawkes and the Board to decertify [Rodriquez] as a qualified candidate." Civil Case No. 17-5, ECF No. 2-1 at 7. Sarauw and Berry also seek "a writ of mandamus compelling Supervisor Fawkes and the Board to de-certify Mr. Rodriguez as a qualified candidate." *Id.*

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 44

"Title 18 of the Virgin Islands Code establishes a comprehensive framework governing elections in the Virgin Islands . . . ." *Haynes v. Ottley*, 61 V.I. 547, 565 (2014). The Board of Elections is at the center of that comprehensive election system. That Board or government entity only has such authority as the law provides. *See, e.g.*, *St. Joseph Abbey v. Castille*, 700 F.3d 154, 166 (5th Cir. 2012) (discussing "common understanding that an administrative board or agency only has the power and authority granted by the constitution or statutes" (internal quotation marks omitted)).

In 2016, the Board of Elections (the "Board") then-recognized and established by 18 V.I.C. § 41, was required to perform several functions involving elections. For example, the Board appoints a Supervisor and two Deputy Supervisors of Elections. *See* 18 V.I.C. § 4(a). The Board, Supervisor of Elections, and Deputy Supervisors of Elections are charged with regulating, managing, and supervising voter registration and the conduct of elections. *See, e.g.*, 18 V.I.C. § 47 (Jurisdiction, powers and duties of boards); 18 V.I.C. § 48 (Regulations; subpoenas; oaths; witnesses; fees); 18 V.I.C. § 92 (Investigative and enforcement powers of board members and inspectors of registration Board members as inspectors of

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 45

registration); 18 V.I.C. § 411 (Examination of nomination petitions, papers, and certificates; notice of defects).

At the time Sarauw and Berry raised their claim in the Removed Action, the 2016 general election had taken place. *See* Civil Case No. 17-3, ECF No. 17, Exh. 2 at 5. Since then, the election results have been certified by the Board of Elections. *See id.*

Having reviewed the Virgin Islands Code, the Court is unable to locate any provision providing the Board with the authority to perform any action affecting an election after the results have been certified. It is true that "[i]f the Supervisor determines that a candidate for election or nomination does not meet the qualifications established by law for the office, then he shall disqualify such candidate and delete the candidate's name from the ballot if the ballots have not been printed." 18 V.I.C. § 411(b). This provision, however, only provides a remedy for erroneous certifications of nomination petitions and papers pursuant to 18 V.I.C. § 4(b)(2), not certification of election results pursuant to 18 V.I.C. § 47(9). It is thus unclear whether the Board has any authority *post-election* to provide the relief that Sarauw and Berry seek.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 46


The Virgin Islands Supreme Court acknowledged this issue in *Haynes v. Ottley*, 61 V.I. 547 (V.I. 2014). In that case, Allen Haynes, Sr. ("Haynes") brought suit against Basil Ottley, Jr. ("Ottley"), the Board, the Supervisor of Elections, and the government of the Virgin Islands. *Id.* at 554. Haynes raised "numerous challenges to the conduct of the Democratic Party's primary election . . . ." *Id.* at 554. Among the allegations, Haynes alleged that Ottley, the running mate of a gubernatorial candidate, was not a bona fide resident of the Virgin Islands, as required under Virgin Islands law. *Id.* at 554-55. Haynes sought a declaratory judgment that Ottley was ineligible to hold the office of lieutenant governor. *Id.* at 555. Haynes asserted that the Superior Court of the Virgin Islands had jurisdiction under 5 V.I.C. § 80, 18 V.I.C. § 412, 18 V.I.C. § 411, and 18 V.I.C. § 76. *Id.* at 556. The Superior Court ruled that it did not have jurisdiction to hear the matter because 18 V.I.C. § 412, with its narrowly drawn provision providing for five days to challenge nomination petitions, supplanted the other statutes' more general grants of jurisdiction. *Id.* at 556-57. Haynes appealed. *Id.* at 557.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 47

The Virgin Islands Supreme Court first addressed whether
the matter was moot. *See id.* at 558. Unofficial election results
stated that Ottley had lost the election to Osbert Potter
("Potter"). *See id.* The court stated that the

> appeal is not moot. The unofficial election
> results reported by the Supervisor of
> Elections are precisely that: *unofficial,* and
> thus subject to change. Under Virgin Islands
> law, election results may not become final
> until potentially weeks after unofficial
> results are announced on Election Day. 18
> V.I.C. § 627(b). As such, we conclude that
> Haynes's challenge to Ottley's eligibility to
> serve as lieutenant governor *will not become
> moot until the Boards of Elections and the
> Supervisor of Elections officially certify
> Potter* as the lieutenant governor-elect in
> accordance with the pertinent provisions of
> the Virgin Islands Code.

*Id.* at 559 (emphasis added). On the question of mootness, the
court concluded that it "decline[d] to dismiss [the] appeal as
moot *because the election has not yet been officially certified*,
and because at least one exception to the mootness doctrine
cautions against dismissal." *Id.* at 576 (emphasis added).

Here, the election results have been certified. *See* Civil
No. 17-3, ECF No. 17, Exh. 2 at 5. Moreover, there is no
exception to the mootness doctrine that cautions against
dismissal. Accordingly, the claims as against the Board and
Fawkes will be dismissed as moot. *See, e.g.,* *Scoggins v.*

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 48

*Collins*, 701 S.E.2d 134, 136 (Ga. 2010) ("We conclude as an

initial matter that appellants' challenge to the inclusion of

Byars'[s] name on the ballot constitutes a pre-election

challenge rendered moot by the occurrence of the general

election."); *Zolliecoffer v. Post*, 371 Ark. 263, 264-66, 265

S.W.3d 114, 116-17 (2007) (Arkansas supreme Court noting that

"[e]lection cases are governed entirely by statute," and

concluding that court lacks "jurisdiction to hear a post-

election challenge to eligibility, and the remedy for usurpation

of office lies with the state under quo warranto" (internal

quotation marks omitted)).[5]

###           ii.   Continued Existence of the Board

Even if the matter were not moot because of the

certification of the post-election results, it may be moot

because the Board may have been extinguished with the passage of

Act 7895. That Act amended 18 V.I.C. § 41 and may have dissolved

---

[5] While the statute generally is not the limit of post-election challenges
that may be available, no other relief at common law is available to Sarauw
or Berry. In an election not involving the Virgin Islands Legislature, and in
the absence of a provision such as Section 6(g) of the ROA, arguably a
qualification challenge post-election certification could be initiated by a
taxpayer or by an action in *quo warranto*. Those circumstances are not
attendant here, however.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 49

what formerly were two separate boards of election, without establishing a single successor board until 2018.

Prior to January 1, 2017, 18 V.I.C. § 41 provided that "[t]here shall be two election districts within the Virgin Islands, the election district of St. Croix and the election district of St. Thomas-St. John." 18 V.I.C. § 41(a) (2016). The statute instructed that "[e]ach election district . . . shall have a separate board of elections." 18 V.I.C. § 41(a) (2016). Each of the two boards "shall consist of seven . . . members who shall be elected by the electors of each election district beginning with the 1986 general election." 18 V.I.C. § 41(b) (2016).

Act 7895, effective January 1, 2017, amended 18 V.I.C. § 41. Section 41, title 18, of the Virgin Islands Code now provides that "[t]here is a single Board of Elections that governs both election districts." 18 V.I.C. § 41(a). The Board of Election is to consist of "fourteen members; seven from each district, who are elected by the electors of each election district *beginning with the 2018 general election*." 18 V.I.C. § 41(b) (emphasis added).

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 50

Nothing in 18 V.I.C. § 41 or title 18 of the Virgin Islands Code explicitly provides for merging the old St. Thomas-St. John and St. Croix boards into a new joint board. Instead, the amended statute simply declares that "[t]here is a single Board" whose members will be elected *beginning with the 2018 general election*." 18 V.I.C. § 41(b) (emphasis added).

Act 7895 also does not provide that there shall or will be a single Board of Elections with 14 members. Rather, the statute proclaims that "[t]here *is* a single Board of Elections" which "consists of fourteen members." 18 V.I.C. § 41(a) (emphasis added). Those fourteen members, however, "are elected . . . beginning with the 2018 election." 18 V.I.C. § 41(b).

The prior version of 18 V.I.C. § 41 provided for board members to serve four year terms. The terms were staggered such that elections would be held for either 8 or 6 board members, alternating every two years. In 2014, an election was held for 6 board members. In 2016 an election was held for 8 board members. In 2018, the 4-year term of the 6 board members elected in 2014 expires. As amended, 18 V.I.C. § 41 calls for electing 8 board members in 2018. Thus, in 2018 the Board of Elections would consist of 16 members. Following 2018, for four of every six years the Board of Elections would consist of 14 members. For

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 51


two of every six years the Board of Elections would consist of

16 members.

The conflicts that abound are numerous[6] and bring into

question the current survival of the Board. To reconcile those

---

[6]     While there is no definition of the Joint Board or provision for its
establishment, prior to the apparent dissolution of the separate boards of
election, the Virgin Islands Code contemplated the Joint Board as a distinct
entity in many respects. Most notably, 18 V.I.C. §§ 4(a) provides that "[t]he
Joint Boards shall be the policy-making body of the Virgin Islands Elections
System and shall exercise supervisory control through the Supervisor of
Elections." 18 V.I.C. § 4(a). Further, "[t]he Joint Boards of Elections shall
prescribe rules and regulation" pertaining to election procedures. 18 V.I.C.
§ 524.

> For purposes of complying with [their duty to promulgate and
> issue election rules and regulations], the Boards shall meet
> jointly at least quarterly at the call of the Chairman of the
> Joint Boards, either upon his motion or at the request of the
> Supervisor of Elections, in order to consider and adopt such
> rules and regulations. Such joint meetings shall be alternated
> between the election districts. A quorum of the Joint Boards
> shall consist of a majority of members.

18 V.I.C. § 47(13). Several other duties were also vested in the Joint Board.
*See, e.g.*, 18 V.I.C. §§ 4(a) ("The Supervisor and Deputy Supervisors shall be
appointed by the Joint Boards of Elections for a term of eight years and
shall otherwise serve at the pleasure of the Joint Boards."); 51 ("The Joint
Board of Elections shall have the discretion to retain the Attorney General
of the Virgin Islands to serve as counsel for each board of elections, or to
retain an independent Counsel. "); 521 ("The Joint Boards of Elections shall
. . . acquire by competitive bidding, as required by the procurement laws of
the Virgin Islands, not less than one hundred ten (110) electronic voting
machines and related equipment  . . . ."); 522 ("The Joint Boards of
Elections and the Supervisor of Elections shall approve or disapprove any
voting system submitted to them within 20 days after the date of its initial
submission.").

Prior to Act 7895, title 18 of the Virgin Islands Code divided
responsibilities between the separate boards of election and the Joint Board
of Elections. Section 41, title 18, of the Virgin Islands Code now proclaims
that "[t]here is a single Board of Elections." 18 V.I.C. § 41(a). No
amendments were made to title 18 to reflect this new status. Many of the new
"single Board of Election['s]" duties and powers are still vested in the
separate boards of election. *See, e.g.*, 18 V.I.C. §§ 46 ("The Commissioner of
Property and Procurement shall provide . . . each board of elections with
suitable and adequate office within its election district . . . ."); 47
("The boards of elections, within their respective election districts, have

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 52

conflicts and create a Board that is *currently* viable, with all
its appurtenant discretionary duties, a court would have to go
far beyond giving effect to legislative intent. That exercise
would require discretionary policy considerations of a kind in
which courts should not engage. *See, e.g.*, *Kendall*, 572 F.3d at
133 ("For us to read the language otherwise or to conclude that
the Commission Act has been 'implicitly or impliedly' amended
would be to legislate from the bench, a task we have neither the
authority nor the inclination to undertake.").

As such, Sarauw and Berry's claim against the Board is
incapable of relief from the Board and is moot.

---

jurisdiction over the registration of electors and the conduct of primaries
and elections . . . , and each board, within its district, shall exercise all
powers granted to, and perform all duties vested in, the boards by this title
. . . ."); 94 ("The offices of each board of elections shall be open for the
examination and registration of electors . . . ."); 95 ("Registration shall
be made at such place or places in each election district as the board of
elections of the district may designate."); 627(a) ("Each board of elections
. . . shall convene not later than one day following the receipt [of
completed ballots] and determine the total number of votes cast in the
election district for each candidate . . . ."); 627(b) ("The chairman . . .
of each board of elections shall . . . notify in writing each candidate
nominated or elected from the district, and . . . report the result thereof
of the Supervisor of Elections in writing.").

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 53


### b. Claims against Rodriquez

#### i.   Declaratory Relief

In addition to their claims against the Board, Sarauw and Berry seek a declaration "that Rodriquez does not meet the 3-year residency requirement[] . . . and is legally ineligible for membership in the 32nd Legislature." Civil Case No. 17-5, ECF No. 2-1 at 7.

Such a declaration, at its core, essentially seeks to breathe life into a post-election challenge of the qualifications of a candidate for the Virgin Islands Legislature. Indeed, it is a distinction without much of a difference. In either case--(1) a declaration of eligibility; or (2) a full blown adjudication of the qualifications of a candidate post-certification of the election--a determination of Rodriquez's qualifications would be undertaken. As discussed above, such a determination is moot.[7]

---

[7]    In a well-reasoned opinion, the Virgin Islands Supreme held that Rodriquez was judicially estopped from claiming Virgin Islands residency. *See Sarauw*, 2017 WL 77123, at *10. The court ruled that:

> the instant matter represents the textbook example of a case where judicial estoppel is warranted. The inconsistency is clear, and without legitimate excuse or explanation. Moreover, the inconsistent statements were all made in a very short duration; for example, Rodriquez filed his adversary complaint in the bankruptcy proceeding stating that he was a resident and citizen of Tennessee less than two weeks before he executed his affidavit of candidacy stating that he was a bona fide

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 54


### ii.  Injunctive Relief

Finally, Sarauw and Berry seek an injunction barring

Rodriquez from serving as a Senator under 5 V.I.C. § 80.

Pursuant to 5 V.I.C. § 80, "[a] taxpayer may maintain an action

to restrain illegal or unauthorized acts by a territorial

––––––––––––––––––––

> resident of the Virgin Islands for the past three years. This warrants an inference that Rodriquez was playing fast and loose with the court. In addition, the United States Bankruptcy Court for the Middle District of Tennessee clearly relied on Rodriquez's representations of his residency and citizenship, in that it accepted jurisdiction over his bankruptcy petition and the adversary complaint, ultimately issuing its final decree on October 17, 2016, and administratively closing the matter on November 28, 2016. Last, but not least, we agree with the Missouri Court of Appeals that domicile and residency are not subjects to be taken lightly because they determine where we undertake some of our most important civic duties including, inter alia, paying taxes and voting, and that the balance of equities firmly tip in favor of requiring candidates for public office to follow these fundamental guidelines.
>
> These reasons, when taken in the aggregate, compel us to conclude that the doctrine of judicial estoppel must apply to this case. While it may appear that the application of judicial estoppel is harsh or unfair, the integrity of the bankruptcy system and judicial comity is more important than any single case, including this one. Thus, we conclude that the Superior Court erred when it held that Rodriquez should not be judicially estopped from contradicting the statements he made in the bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Tennessee.

*Id.* at *9-10 (citations, alterations, and internal quotation marks omitted).
At the same time, that court cautioned that the legal basis for Sarauw and Berry's claim had not yet been explained. *Id.* at *11 (explaining that "the Superior Court has to date not expressly identified the precise legal basis for Sarauw and Berry to challenge Rodriquez's eligibility to serve in the 32nd Legislature"). As discussed above, the legal basis is wanting whether the claim is labeled a post-certification challenge or a petition for a declaration of qualification.

*Sarauw v. Rodriguez; Rodriguez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 55

officer or employee." 5 V.I.C. § 80. As the Supreme Court of the

Virgin Islands explained, "Virgin Islands courts . . . construe

section 80 as meaning what it says, that any taxpayer may sue

the *Government or one of its officers or employees* to prevent a

violation of the law." *Haynes*, 61 V.I. at 567 (emphasis added).

Rodriquez is not an officer or employee of the Government of the

Virgin Islands. For this reason, Sarauw and Berry cannot obtain

injunctive relief through 5 V.I.C. § 80.

## IV.  <u>Conclusion</u>

The issues presented by the Consolidated Cases are, in many

respects, novel, subtle, and complex. They call upon this Court

to interpret laws that most likely did not contemplate the

procedural and substantive Gordian Knot that could be wrought by

the perfect storm of events that have developed. Indeed, the

entanglement presented by the parties' petitions require, among

other things, inquiry into, and balancing of, separation of

powers issues, political question issues, and federal-state

issues.

The unfortunate timing of events creates uncertainty and

hardship on the community and the parties. With respect to

Sarauw and Berry, the record clearly establishes that Rodriguez

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 56


claimed residence in two different places for the same time
period. Because those conflicting claims were made in two
separate judicial tribunals, the inconsistent positions are
subject to judicial estoppel--the purpose of which "is to
protect the integrity of the judicial process by prohibiting
parties from deliberately changing positions according to the
exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742,
749-50 (2001). Yet, given the statutory construct, as well as
the timing of Sarauw and Berry's claim--post-election and post-
certification of election results--an otherwise arguably
dispositive doctrine currently finds no forum within which to be
applied.

It is unfortunate that Sarauw and Berry may have felt
assured with the partial ruling on judicial estoppel. At the
same time, it is worth noting that when it issued its ruling on
judicial estoppel, the Virgin Island Supreme Court cautioned
that, "the Superior Court has to date not expressly identified
the precise legal basis for Sarauw and Berry to challenge
Rodriguez's eligibility to serve in the 32nd Legislature."
*Sarauw*, 2017 WL 77123, at *11. The absence of that legal basis
is fatal to Sarauw and Berry's claim.

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 57

Similarly, with respect to Rodriguez, it is unfortunate
that he may have felt some degree of assurance with the
certification of elections results. At the same time, the
challenges to his residence, at the very least, served notice
that a path to membership in the Legislature was not assured. As
the Legislature has taken no action to consider whether
Rodriquez is entitled to membership, his claim is both
procedurally novel and legally wanting. At its core, he seeks to
have this Court command action on the part of a co-equal and
coordinate branch of government--the Legislature--to seat him.
That action is exclusively within the province and discretion of
that branch.  The Court cannot cross that line.

In light of the foregoing, dismissal of the complaints in
the Federal Action and the Removed Action is appropriate.

Significantly, the vacancy of a member of the Legislature
created by the attendant circumstances, is not without remedy.
Indeed, the ROA contemplated that there might be vacancies. To
remedy that occurrence, Section 6(h) of the ROA provides: "The
Legislature of the Virgin Islands shall by law provide the
procedures for filling any vacancy in the office of member of
the legislature." ROA § 6(h). The Virgin Islands Legislature did
so. The Virgin Islands Code provides that, where the next

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 58

election is more than a year away, if "a vacancy occurs in the office of a member of the Legislature, the Governor shall call a special election . . .within 30 days following the day on which the vacancy occurs." 2 V.I.C. § 111. It is entirely within the province of the executive to do so if he chooses.

The Court is not unmindful that, given the current state of the law with respect to the Joint Board of Elections created by Act 7895, there may be some doubt as to the current survival of any entity that would hold an election. There are multiple possible interpretations of, and inconsistencies and conflicting contingencies in, Act 7895 that arguably may require an overhaul. Indeed, a Court would have to substitute its judgment for the words of the statute to create a comprehensive and internally consistent statute. That, however, would require the Court to engage in an exercise in which it cannot--judicial legislation. As the United States Supreme Court has cautioned,

> [n]o mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of a statute.

*Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 452 (1901) (internal quotation marks omitted).

*Sarauw v. Rodriquez*; *Rodriquez v. 32nd Legislature of the V.I.*
Civil No. 2017-5; Civil No. 2017-3
Memorandum Opinion
Page 59


    The conundrum created by Act 7895, like the Senate vacancy

issue, is not without remedy. Indeed, the remedy to Act 7895

involves policy considerations that are appropriately left to

the first branch of government.



                                    S\_____
                                       **CURTIS V. GÓMEZ**
                                       **District Judge**